C. C. Murphy, Respondent, v. Hannah Murphy et al., Appellants.

St. Louis Court of Appeals, April 20, 1886.

1. Mechanic's Liens—Mingling Items.—An account, filed as the foundation of a mechanic's lien, which contains items for which the law gives no lien, vitiates the whole lien claim.

2. —— Superintendent.—The law gives no lien against a building for superintending the construction thereof.

8. —— Contracts—Evidence.—A card containing the words, "house complete, except rock work, including gas, bells, and plumbing, $1,910," and signed by the plaintiff, coupled with proof that he had proposed to build the defendant a house on the basis of the lowest bid which might be obtained for all work except the stonework, and that after the bids were opened and canvassed, he figured upon a paper and then wrote, signed, and handed the card to the defendant stating that it was his proposal, whereupon the defendant, accepted it and told him to go to work, is evidence of the contract price at which the work was done.

4. —— Instructions.—In an action for a balance claimed for doing the work, where the price at which the work was to be done was the issue, it is proper to specifically instruct the jury that the delivery of the card, under the circumstances, constituted a contract between the parties.

5. —— Evidence.—It is error to allow a witness who had merely looked at the outside of the building and who took no measurements and knew nothing as to how the building was finished inside, to give an opinion as to the value of the house.

Appeal from the St. Louis Circuit Court, Shepard Barclay, Judge.

*Reversed and remanded.*

David Murphy and A. A. Paxson, for the appellants.

A. R. Taylor, for the respondent.

THOMPSON, J., delivered the opinion of the court.

This was an action for a balance alleged to be due on an account for the reasonable value of work and labor done and materials furnished at the instance and request of the defendants in building a house upon a lot of ground, which was the separate property of the defendant Hannah Murphy, and to establish a mechanic's lien against such property. The petition admits the payment of $1,852.50. The answer of Hannah Murphy was a general denial ; and James F. Murphy answered, setting up a special contract, whereby the plaintiff agreed to do the work and furnish the materials for the sum of $1,910.00, and avering performance of the contract on his part by the payment by him to the plaintiff of that sum. There was a trial before a jury and a verdict for the plaintiff in the sum of seven hundred dollars, and, also, a verdict that the plaintiff had established a mechanic's lien against the property in question. Upon this verdict the court entered a general judgment against the defendant James F. Murphy, and that if no sufficient property of James F. Murphy can be found to satisfy the same, then, that the residue be levied out of the separate property of Hannah Murphy, described in the petition, and against which the lien was found to exist. From this judgment the defendants have appealed.

I. So much of the verdict and judgment as established a mechanic's lien against the property must be set aside, because it is shown by the plaintiff's evidence that the itemized account set out in the petition, and which was filed with the claim of lien, embraces a charge of ten per cent. for superintending, which charge is not separately set out, but is embraced in and mingled with the various items of brick work, plastering, mill work, etc. The rule is, that where an account is filed as the basis of a claim for a mechanic's lien, which contains a lumping charge, in which is mingled an item for which

the law gives no lien, the statute has not been complied with, and no lien is acquired in respect of such item; and, further, that the law gives no lien for superintending the erection of a building. *Nelson v. Withrow*, 14 Mo. App. 270, 277, and cases cited. In this case the plaintiff's testimony shows that this charge of ten per cent. for superintending was added by him to every item in the account. It, therefore, vitiated the whole lien and rendered it void. In this respect there is nothing to distinguish this case from *Nelson v. Withrow, supra*, except that in that case there was but one *item* in the account, and in this case there are many. The defendants were, therefore, entitled to the instruction requested, to find against the plaintiff in respect of the lien against the separate estate of the defendant Hannah Murphy.

II. This puts the question of lien wholly out of view and renders it unnecessary to consider whether an agency on the part of James F. Murphy to make the contract for his wife, Hannah Murphy, for the building of the house, was shown. As this is not a suit in equity to charge the separate estate of Hannah Murphy upon a contract made by her, but is a suit at law seeking to make such a charge only upon the allegation and theory of a mechanic's lien, so much of the judgment as charges her separate estate with such part thereof as can not be made out of the defendant James F. Murphy, is without foundation and must be vacated.

III. It remains to consider whether there was error in so much of the proceedings as resulted in the general judgment of seven hundred dollars against James F. Murphy. The evidence clearly showed that the erection of this building was contracted for between the plaintiff and James F. Murphy upon the understanding that the plaintiff was not, in his own language, "to make anything off him at all;" that, to this end, bids were invited for the doing of all the different elements of the work, except the stone work, which was to be done by

John Studdert under a separate arrangement with James F. Murphy; which bids were opened and examined by the plaintiff and James F. Murphy at the latter's place of business; that the latter refused to give an order for the doing of the work until bids were in for all the different branches of the work, including the plumbing; that when these bids were all in, the plaintiff and the defendant, James F. Murphy, met at the latter's place of business; that James F. Murphy inquired of him what he would charge to do the entire job of work except the stone work; that the plaintiff thereupon called for paper upon which to figure, and, as the result of his figuring, the plaintiff wrote out in pencil upon a card the following proposition which he signed and handed to James F. Murphy: "House complete, except rock work, including gas, bells, and plumbing, $1,918.00. C. C. Murphy." That James F. Murphy thereupon read the card over and asked him "Is that it?" and he said that it was it; whereupon James F. Murphy told him he might go to work and build the house on those terms. We do not see in the record any evidence distinctly contradicting the facts thus stated. The plaintiff testified in general terms that he had no contract with the defendants as to what the cost of the work would be. He also said: "I did not in the presence of Harry Alston at James F. Murphy's saloon enter into a contract with James F. to complete the house, except rock work, and including plumbing, bells, etc., $1,918." Then, when showed the card with the writing upon it, above set out, he admitted that it was in his handwriting; "but what of that? I don't consider that a contract." Certainly, standing by itself, without any parol explanation, it was not a contract; but explained by the surrounding facts above stated, which stand in the record without specific contradiction, it was evidence of a contract and a binding contract. The loose statement of a witness named Botts, that he heard James F. Murphy say that he had no contract with the plaintiff, does not contradict the distinct

facts above set out. The defendant's evidence also
tended to show that James F. Murphy had paid more
than $1,918.00 to the plaintiff, or to others on his or-
ders.

This question of contract or no contract, was sub-
mitted to the jury upon the following instruction, given
at the request of the defendants : "The court instructs
the jury that under the pleadings in this case, plaintiff
can not recover the reasonable value of the building and
improvements described in the petition, if the jury
believe from the evidence that he and defendant, James
F. Murphy, entered into a contract and agreement that
plaintiff should furnish the labor and materials used
therein (except the rock work) for a certain fixed price,
and that said price has been paid on account of said
labor and materials by defendant James F. Murphy to
plaintiff or to others upon his orders ; and if the jury so
find, they will return a verdict for defendants." This
submitted the question to the jury in general terms and
was well enough so far as it went, and if a more specific
instruction had not been requested by the defendant,
James F. Murphy, he would have no reason to complain.
But the defendants did request a more specific instruc-
tion, in the following language : "The court instructs
the jury that if from the evidence they believe that
plaintiff made a proposal in writing to build the house
in question complete, except rock work, for the sum and
price of $1,918.00, and that defendant James F. Murphy,
on receiving such written proposal, agreed to pay
plaintiff such sum for such work, then such written
proposal of plaintiff, if agreed to by said defendant,
constituted a contract and agreement, and must control
this case. And if the jury find from the evidence that
said defendant James F. Murphy has fully paid such
sum of $1,918.00 to plaintiff, or his order, or on account
of such contract, then plaintiff is not entitled to recover
anything in this action, but your verdict should be for
defendant." This instruction the court refused to give.

It was a correct statement of the law arising upon the facts above set forth. The defendants clearly had the right to have the minds of the jury thus instructed as to the legal conclusion arising upon those facts. The giving of the former instruction went no further than to direct the minds of the jury in general terms to the conclusion of law, that if there was a distinct contract between the parties, which had been complied with by the defendants, the plaintiff could not recover. But it left them to drift about, unaided and subject to be misled by the argument of counsel, upon the question under what circumstances such a brief memorandum becomes evidence of a contract. This the last instruction above set out aptly explained to them, and the refusal of it was error.

This error will appear to have been more prejudicial from a statement of what followed. After the instructions had been given, the counsel for the plaintiff, in addressing the jury, used the following language: "Gentlemen, this scrap of paper [holding up to the jury the card signed by C. C. Murphy, in evidence], is not a contract. You all know that such a writing as this is not a contract, and if this is not a contract, then how can defendants support their claim that plaintiff agreed to do the work for a specific sum?"

The defendants' counsel objected to the use of such language, as calculated to mislead the jury, and objected that such language in the hearing of the court was liable to be construed as a virtual approval thereof; and the defendants thereupon prayed the court, whilst the plaintiff's counsel was so arguing before the jury, to instruct the jury as follows: "The court instructs the jury that if they believe and find from the evidence that, before the plaintiff commenced the erection of the house described in plaintiff's petition, defendant James F. Murphy demanded to know of plaintiff what the entire cost and price of the said house was to be, and that plaintiff then wrote the proposition or offer on the back

of the card in evidence, and handed it to said defendant James F. Murphy for his acceptance or refusal, and that said defendant James F. Murphy accepted the offer or proposition as made and authorized plaintiff to proceed with the work, then the court declares that such acts would constitute a contract, so far as this case is concerned." This instruction, it is perceived, embodied substantially the same proposition as instruction numbered thirteen, refused, as above set out. It was a correct statement of the law upon the evidence, as above recited, and under the circumstances, it ought to have been given. If instruction numbered thirteen had been given, of course it would not have been necessary for the defendants to ask for such an instruction as this, but they would have had the right to have the court check and correct the line of argument which the plaintiff's counsel was pursuing.

IV. In respect of so much of the verdict as presumably embraces commissions for superintending, at the rate of ten per cent., upon the various items of charges set out in the account embodied in the petition, the verdict is contrary to the plaintiff's own evidence. It sufficiently appears from his own evidence that it was not the intention to make any such charge. He testifies : "I told him (James F. Murphy) that I would build a house as cheap as possible ; that I did not want to make anything off him at all, and to show him that I would not make anything off the job, I advised him to invite bids for all the work other than my work, and then he would know as much about it as I did myself." His testimony also shows that the bill which he first exhibited to the defendant James F. Murphy, did not contain this charge at all, but that when James F. Murphy objected to the bill, because not in accordance with the contract, he just concluded that he would add this item of ten per cent. for superintending.

V. Witnesses were allowed to testify, against the objection of the defendants, as to the value of the house

without measuring it and without looking at the inside of it; and it was upon such testimony as this that the verdict had been constructed—a verdict so plainly contrary to the understanding of the parties, that it ought not to have been allowed to stand. Admitting loose evidence of value of this kind, is plainly erroneous where the case is susceptible of better evidence, assuming that evidence of value is relevant.

The judgment will be reversed and the cause remanded. It is so ordered. All the judges concur.